# MARÍA RIOS DE RUBIO

*v.*

## VICTOR BURSET ET AL.

San Juan, Equity, No. 196.

1. Plaintiff was born in Mexico, in 1870, of Spanish parents; lived in Spain in 1887 and 1888; married a Spaniard in 1890. The husband, on October 29th, 1899, made, in Porto Rico, the declaration of Spanish citizenship required by article 9 of the treaty, including his wife and children in it; he registered in the Spanish consulate in 1900; plaintiff, her husband being dead, registered in said consulate in 1900, 1901, 1902, 1903, and 1905. Held: That she is a Spanish citizen, and was not included within the scope of said article 9, she not being a native of Porto Rico, and plea to the jurisdiction overruled.

2. Municipal courts in Porto Rico in 1899–1900 were courts of record.

3. A declaration by the husband carried with it the reservation of citizenship for his wife and children.

4. General orders of the military government, Nos. 132 and 164, construed.

5. During the term at which the decree was entered, and before appeal perfected, the court has control of the decree.

6. The court has power to stay an execution for costs against parties who have not perfected an appeal until an appeal can be heard and decided.

Opinion filed September 24, 1906.

*Francis H. Dexter, Esq.*, solicitor for plaintiff.

*N. B. K. Pettingill, Esq.*, solicitor for defendants.

RODEY, Judge, delivered the following opinion:

The decree in this case was entered at the present term of this court by a former judge on April 21, 1906. Thereafter, certain of the defendants, to wit, Garzot and Fuertes, perfected an appeal to the Supreme Court of the United States and filed a supersedeas bond in the premises.

But Victor Burset, Petronila Patricia Rios de Noya, and her husband, Francisco Noya, and Santiago Palmer, had not perfected their appeal, although the same was granted. And on August 26, 1906, came into court and represented by a motion that an execution for costs had issued against all the defendants in the premises, and requested that the granting of said appeal be set aside and that the motion for costs be recalled, and that the decree be entirely set aside,—certainly as to these who have not perfected their appeal,—for the reason that, as matter of law, this court was, at the time of the commencement of the suit, and ever since has been, without any jurisdiction to try or hear the same or render any judgment or decree therein. The reason for the motion is that the defendants are in fact, and are alleged in the bill to be, citizens of Porto Rico, and that the complainant, María Rios de Rubio, although she alleged in her bill that she was a subject of the King of Spain, was and is, in fact and in law, a citizen of Porto Rico, and that therefore, all the parties being citizens of Porto Rico, this court, as matter of law, under its ruling in a recent case, was without jurisdiction to entertain the cause at all; and that such a question in a court of the United States can be raised at any time before the court loses control of the record in the case.

On the question as to whether or not this court, at the same term, still has control of the cause before the appeal, though

granted, is perfected by the filing of a bond for costs, the court. has no doubt whatsoever, under the authority of Goddard v. Ordway (Phillips v. Ordway) 101 U. S. 745, 25 L. ed. 1040, and other authorities cited, and therefore decides and holds that it. still has control of the cause.

Although the complainant alleges in her bill of complaint that she was a subject of the King of Spain, it appeared from the testimony, as taken by the master, whether the same was inadvertent or otherwise, that she was born in Porto Rico about the year 1870, that her father died in the year 1875, that she married in 1891, and that her husband died on the 2d of April,. 1899, and that she still remains his widow.

Counsel for complainant came in and made a showing against this and claimed that it was a mistake, and, in proof of the contrary, introduced first the affidavit of the complainant herself, showing that she was born of Spanish parents in the city of Mexico, in the republic of Mexico, on the 12th day of December, 1870; and that on the ninth day of November, 1890,. she married Don Ricardo Rubio y Escobar, a native of the city of Cordova in the Spanish peninsula, and that she lived in. Spain during the years 1887 and 1888 with the purpose and intention of permanently residing there, but that unavoidable circumstances required her to return to Porto Rico; further,. that it was, and always has been, her intention to remain a subject of the King of Spain and to return there. The affidavit will be set out in the record.

There was also filed a certificate from the present secretary of Porto Rico, showing that, under the provisions of art. 9 of the treaty of peace between the United States and Spain, her husband, Ricardo Rubio y Escobar, on the 29th day of October,. 1899, signed a certificate for himself, to preserve his Spanish

allegiance under the treaty, before Antonio Aguilar, clerk of the municipal court (which has been held to be *pro tanto* a court of record) at Humacao, in Porto Rico, and that in that he also gave the name of complainant and her children. It also will be found in the record.

There was also filed a certificate from T. Rodriguez, vice consul of Spain at San Juan, that, according to the data contained in the registry books of Humacao, which is archived in this office, it appears that Don Ricardo Rubio y Escobar, who was registered on the 24th day of January, 1900, did not live the time required in order to renew his certificate of citizenship. There was also introduced in evidence a certificate of the same Mr. Rodriguez, vice consul as aforesaid, that on the first folio and under Nos. 27 and 28, respectively, of the registry of Spaniards kept at the city of Humacao, there appears registered Don Ricardo Rubio y Escobar of Cordova, Spain, and Doña María Rios de Rubio of Mexico, which inscriptions were made on the 24th day of January, 1900.

And still another certificate from the same official, which certifies that, in the same registry of personal schedules in his custody, Doña María Rios, widow of Rubio, has renewed her certificate of citizenship (to Spain) on September 12, 1900; May 28, 1901; April 15, 1902; April 22, 1903; and the last time on August 13, 1905.

It is manifest that this woman, the complainant, was, in legal contemplation, "a native of the Peninsula," within the meaning of art. 9 of the treaty of Paris, at the time of the ratification thereof. She was born in Mexico of Spanish parents, but whether they were there temporarily or permanently does not appear. However, she married a Spaniard, Mr. Rubio y Escobar, and her own parents had taken her to Spain while she was yet a child. Her husband did everything he could to pre-

Rios de Rubio v. Burset.

serve, not only his Spanish citizenship, but hers as well, and it certainly is within the meaning of the treaty that, when a man, being, in the language of art. 9, a Spanish subject, native of the Peninsula, preserved his Spanish citizenship under that article, it carried with him the citizenship of his wife, whether or not he mentioned her in his declaration. And the woman herself, it appears, ratified and kept up this declaration of Spanish citizenship year after year, as above set out. It would be unreasonable to hold that the treaty did not intend that the wife and children of a Spaniard would follow his citizenship under that article. The authorities of the military government in Porto Rico understood that article of the treaty in this light, as is made plainly manifest by G. O. 132, issued on August 31, 1899, by Brigadier General Davis. Because it requires the husband making such declaration to set out the name and surname of his wife, and provides that unmarried women, natives of the Peninsula, can make a declaration the same as men. If there is any question as to whether or not the court in question was a court of record within the meaning of this article, we refer again to G. O. 132, which specifies that very court as the one before which this declaration is to be made. This court has, at this same term, after careful consideration, held that the municipal courts of Porto Rico were, *pro tanto,* their jurisdiction being $400 and having a clerk and a seal, courts of record. But in this view we call attention to the Spanish text of art. 9 of the treaty of Paris, which provides that this declaration is to be made before "una oficina de registro," meaning registry office. So that for Spaniards, at least, as the Spanish text of the treaty is just as official as the English text, any registry office would properly be held to be sufficient by this court. The fact is that practically all the declarations made under that article of the treaty by Spaniards to preserve their Spanish al-

II. Porto Rico.—13.

legiance were made before these municipal courts, and are now on file with the proper custodian. Par. 4 of the said G. O. 132 was modified by G. O. 164 of October 18, 1899, and authorized guardians to make declarations for their wards, and principals and masters with respect to their employees or dependents who are under age, etc. The woman was not a born Porto Rican at the date of the treaty. She was a Spaniard, married to a Spaniard, although she was born in Mexico. We do not think that her case comes within the rule in Shanks v. Dupont, 3 Pet. 242, 7 L. ed. 666, but that, under the intent and meaning of art. 9 of the treaty and her own acts and intentions, she was, at the time of the filing of the bill here, and still is, a Spaniard; and therefore, because of the adverse citizenship of the parties, this court had jurisdiction and the decree should stand; and it is so ordered, and the matter of the appeal will be considered as restored to the condition it was in before the filing of the motion considered herein.

As to the motion herein to quash the execution for costs, it is granted and the same will be stayed until the determination of the cause in the Supreme Court of the United States. The court can find but little authority as to this proposition and practically none has been pointed out to it by counsel.

The present incumbent of this bench has noticed some instances where costs and damages thus required to be paid in this island have been lost to the party who finally recovered judgment in the Supreme Court of the United States, and, as part of the defendants have a supersedeas bond, and it is claimed that the complainant is impecunious and could not respond in case of a reversal of the cause, even for the costs, the court will not take any risks on it, and therefore an order will be entered staying the execution for costs for the time, as stated.